# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAMON LAMAR CAMPBELL,     )

    )    3:09-cv-00290-LRH-VPC

    Plaintiff,    )

    )

    v.    )    **REPORT AND RECOMMENDATION**

    )    **OF U.S. MAGISTRATE JUDGE**

COLLIN BROWN, *et al.,*    )

    )

    Defendants.    )    February 4, 2013

_____)

       This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#32) and plaintiff's cross-motion for summary judgment (#46).[1]  Plaintiff opposed defendants' motion for summary judgment (#44) and defendants replied (#48).  Thereafter, defendant Schaff filed a joinder to defendants' motion for summary judgment (#64) and the court granted plaintiff permission to file a response (#67).  Defendants also opposed plaintiff's cross-motion for summary judgment (#50) and plaintiff replied (#52).  The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#32) be GRANTED in part and DENIED in part, and that plaintiff's cross-motion for summary judgment (#46) be DENIED.

## I.  HISTORY & PROCEDURAL BACKGROUND

       Plaintiff Damon Lamar Campbell ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#5).

---

[1] Refers to the court's docket numbers.

However, the allegations set forth in plaintiff's complaint pertain to events which occurred while plaintiff was an inmate at High Desert State Prison- Indian Springs ("HDSP") (#22).  Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Fourteenth Amendment due process rights in disciplinary proceedings that occurred on August 25, 2010.

Plaintiff alleges the following:  on August 17, 2010, defendant Senior Correctional Officer Colin Brown and other correctional officers "viciously attacked" him (#22, p. 8).  As a result of the attack, plaintiff was charged with disciplinary violations, but defendant Brown failed to serve plaintiff with the notice of charges prior to plaintiff's disciplinary hearing.  *Id.* at 4.  Plaintiff refused to attend the preliminary hearing, at which plaintiff would have had an opportunity to submit his plea and request witnesses, because defendant Brown conducted that hearing.  *Id.* at 5.

On August 25, 2010, defendant Lieutenant Conrad Schaff conducted plaintiff's disciplinary hearing (#22, p. 7).  Defendant Schaff refused to allow plaintiff's requested witness, inmate Deshawn Crawford, to testify at the hearing and commented that he does not believe testimony from inmate witnesses.  *Id.*  However, after plaintiff continued to request that Crawford be allowed to testify at the hearing, defendant Schaff left the room, stating he was going to go interview Crawford. *Id.*  When defendant Schaff returned, he informed plaintiff that Crawford's testimony was not useful to plaintiff's defense, but refused to play Crawford's tape-recorded statement.  *Id.*  Defendant Schaff stated that his "higher ups" had ordered him to find plaintiff guilty and to give plaintiff the maximum sanctions.  *Id.*  Plaintiff ultimately received 360 days of disciplinary segregation, 360 days loss of visitation, and loss of good time referral.  *Id.* at 7-8.

Plaintiff asserts that the false charges and constitutionally deficient disciplinary proceedings were instituted to cover up the correctional officers' attack.  *Id.* at 8.  Plaintiff also asserts that

defendants Warden D.W. Neven, Associate Warden Isidro Baca, and Associate Warden Cole

Morrow denied plaintiff's grievances regarding the disciplinary proceedings and failed to adequately

supervise their subordinates.  *Id.* at 10.

The court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and dismissed

plaintiff's supervisory liability claims against defendants Neven, Baca, and Morrow (#21, p. 6).

However, the court permitted plaintiff's Fourteenth Amendment due process claims against

defendants Brown, Schaff, Neven, Baca and Morrow to proceed.[2]

Defendants allege the following:  on August 17, 2010, plaintiff was involved in a physical

altercation with multiple correctional officers at HDSP (#32, Ex. A, p. 5).  As a result of the

altercation, Senior Correctional Officer Portillo charged plaintiff with MJ3: battery.  *Id.*  On August

22, 2010, defendant Brown was directed to give plaintiff the notice of charges and conducting

plaintiff's preliminary hearing (#32, Ex. D, ¶ 7, Ex. E, ¶ 5).[3]  Portillo was assigned to help defendant

Brown transport plaintiff to the unit floor office (#32, Ex. E, ¶ 5).  However, when the officers

arrived at plaintiff's cell, plaintiff refused to be restrained and refused to participate in the

disciplinary process at that time (#32, Ex. D, ¶¶ 8-9, Ex. E, ¶ 6).  The officers told plaintiff that his

refusal to participate would be considered a refusal to accept the disciplinary forms (#32, Ex. E, ¶ 7).

Defendant Brown noted plaintiff's refusal to participate on Disciplinary Forms I and II; and Portillo

---

[2] Specifically, the court permitted the following Fourteenth Amendment due process claims to proceed: (1) defendant Brown failed to serve plaintiff with a written notice of charges at least twenty-four hours before plaintiff's disciplinary hearing; (2) defendant Schaff refused to allow plaintiff to present his witness; (3) defendant Schaff based his disciplinary decision on his supervisors' orders to find plaintiff guilty instead of the evidence presented at the hearing; and (4) defendants Neven, Baca and Morrow denied plaintiff's grievances regarding the disciplinary process (#21, pp. 6-7).

[3] Defendant Brown's duties include delivering the notice of charges and conducting preliminary hearings for inmates charged with disciplinary infractions that are housed in Brown's unit (#32, Ex. D, ¶ 4).  When an inmate receives a notice of charges, he is informed over the intercom that he will be given the notice of charges and is then given a short time to get ready for transport to the unit floor office, where an initial inquiry (called a preliminary hearing) will be conducted (#32, Ex. D, ¶ 6).  If the inmate refuses to attend the preliminary hearing, the hearing will proceed outside the inmate's presence (#32, Ex. C, p. 17).  Inmates are provided the notice of charges on a form titled Disciplinary Form I and are provided the preliminary hearing report on a form titled Disciplinary Form II (#32, Ex. D, ¶ 5, Ex. C, ¶¶ 14-17). If an inmate refuses to sign the forms, the refusal is noted on the form (#32, Ex. D, ¶ 5).

signed Disciplinary Form II as a witness (#32, Ex. D, ¶ 9, Ex. E, ¶ 7, Ex. A, pp. 4-5).  Due to the severity of the charges, defendant Brown referred the matter for a disciplinary hearing (#32, Ex. D, ¶ 10).  When the forms were completed, defendant Brown and Portillo slid a copy of the forms under plaintiff's cell door (#32, Ex. D, ¶ 11, Ex. E, ¶8).

On August 25, 2010, defendant Schaff conducted plaintiff's disciplinary hearing (#32, Ex. A, pp. 1-3).   Defendant Schaff began the hearing by reading Portillo's report of the altercation.  The report indicated that Portillo asked plaintiff to make room for other inmates on a bench.  However, plaintiff refused and argued with Portillo, saying: "You don't tell me what to do."  The report stated that plaintiff stood up with his fists clenched, refused to be restrained, pushed off the wall and lunged towards Portillo, then fell on top of Portillo (#32, Ex. F, pp. 3-6).

Plaintiff was given an opportunity to defend himself against the charges and describe his version of the events (#32, Ex. F, pp. 6-9).  Portillo also testified briefly regarding his version of the events and plaintiff responded (#32, Ex. F, pp. 9-12).  Defendant Schaff then interviewed inmate Deshawn Crawford, plaintiff's requested witness, outside of plaintiff's presence (#32, Ex. F, pp. 14-18).  Following Crawford's interview, defendant Schaff found plaintiff guilty of MJ3: battery (#32, Ex. F, pp. 18-19, Ex. A, pp. 1-3).  Plaintiff appealed defendant Schaff's decision, but the appeal was denied (#32, Ex. G, pp. 14-15).

Plaintiff disputes certain aspects of defendants' statement of facts, as follows:  plaintiff contends that neither defendant Brown nor Portillo ever slid a copy of the notice of charges under plaintiff's cell door (#44, p. 3).  Plaintiff also contends that his disciplinary hearing was initially scheduled for August 24, 2010.  *Id.*  On that day, plaintiff was taken to the unit floor office where defendant Schaff was present to conduct the hearing.  *Id.*  At the start of the proceedings, plaintiff informed defendant Schaff that he had not received a copy of the notice of charges.  *Id.*  Defendant

Schaff continued the hearing to the following day, however, plaintiff was still not given a copy of the notice of charges.  *Id.*

Defendants now move for summary judgment on the grounds that: (1) defendants did not violate plaintiff's Fourteenth Amendment due process rights; (2) defendants are entitled to qualified immunity; and (3) defendants cannot be sued in their official capacities (#32, pp. 1-2, 10).[4] Defendants attach several documents to support their motion for summary judgment, including: (1) the notice of charges (Disciplinary Form I) (#32, Ex. A, p. 5);[5] (2) the preliminary hearing report (Disciplinary Form II) (#32, Ex. A, p. 4);[6] (3) the disciplinary hearing report (Disciplinary Form III) (#32, Ex. A, pp. 1-3);[7] (4) a compact disc containing audio from plaintiff's disciplinary hearing (#32, Ex. B);[8] (5) a copy of NDOC's Administrative Regulation ("AR") 707 (#32, Ex. C);[9] (6) the declaration of Colin Brown (#32, Ex. D); (7) the declaration of Manuel Portillo (#32, Ex. E); (8) a transcript from plaintiff's August 25, 2010, disciplinary hearing (#32, Ex. F);[10] (9) a copy of Grievance Log No. 20062904544 (#32, Ex. G);[11] and (10) the declaration of Conrad Schaff (#64-1, Ex. A).

Plaintiff opposes defendants' motion and moves for summary judgment on the grounds that: (1) defendant Brown failed to serve plaintiff with the notice of the charges at least twenty-four hours prior to plaintiff's disciplinary hearing, and defendant Schaff failed to remedy the problem after plaintiff informed defendant Schaff that he had not received a copy of the notice of charges (#46, p. 4); (2) defendant Schaff refused to allow plaintiff's requested witness, inmate Crawford, to be

---

[4] Plaintiff concedes that defendants cannot be sued in their official capacities (#44, p. 12).
[5] Authenticated by the Declaration of Isidro Baca (#32).
[6] Authenticated by the Declaration of Isidro Baca (#32).
[7] Authenticated by the Declaration of Isidro Baca (#32).
[8] Authenticated by the Declaration of Isidro Baca (#32).
[9] Authenticated by the Declaration of Isidro Baca (#32).
[10] Transcribed by Shannon L. Taylor and authenticated by the Transcriber's Certificate (#25, Ex. F, p. 20).
[11] Authenticated by the Declaration of Cole Morrow (#32).

present at the hearing (#46, p. 4); (3) defendant Schaff was not an impartial decision maker, as is evidenced by defendant Schaff's statement that his "higher ups" instructed him to find plaintiff guilty and to sanction plaintiff to the "maximum" (#46, p. 6); (4) defendants Baca, Neven and Morrow failed to remedy the due process violations committed in plaintiff's disciplinary hearing after learning of these violations through the grievance process (#46, p. 7);[12] and (5) defendants are not entitled to qualified immunity (#44, pp. 10-11).[13]

## II.  LAW & ANALYSIS

### A.  RELEVANT LAW

#### 1.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

#### 2.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the

---

[12] Plaintiff argues that defendants Baca, Neven and Morrow should have provided plaintiff with a new disciplinary hearing, conducted by an impartial disciplinary hearing officer (#44, p. 9).

[13] Plaintiff also argues that defendant Schaff failed to provide a meaningful explanation of his guilty finding (#46, p. 6). However, plaintiff neglected to include this allegation in his complaint, and thus, it is not properly before the court.

moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all

evidence and any inferences arising from the evidence in the light most favorable to the nonmoving

party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has

noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord deference
> to the views of prison authorities.  Unless a prisoner can point to sufficient evidence
> regarding such issues of judgment to allow him to prevail on the merits, he cannot
> prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds

could differ on the material facts at issue, however, summary judgment should not be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and

submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact

for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d

764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the

motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific

facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and upon which that party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the

matters asserted, but must only determine whether there is a genuine issue of material fact that must

be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a

reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.  ANALYSIS**

1.  **Fourteenth Amendment Due Process Claim**

Under the Due Process Clause of the Fourteenth Amendment, "[p]risoners . . . may not be deprived of life, liberty, or property without due process of law."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981).  In order to prevail on a claim of deprivation of liberty without due process of law, a plaintiff must first establish the existence of a protected liberty interest.  After meeting this threshold requirement, the plaintiff must then demonstrate that the defendants failed to provide the process due.  *See Wolff*, 418 U.S. at 556-57; *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

Liberty interests may arise from two sources—the Due Process Clause itself or state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  The Due Process Clause itself does not confer a liberty interest in freedom from state action taken "within the normal limits or range of custody which the conviction has authorized the State to impose."  *Sandin*, 515 U.S. at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  Thus, the Supreme Court has found that the Due Process Clause does not afford prisoners a liberty interest in being free from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general prison population.  *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence.")

However, in certain circumstances, states may create liberty interests protected by the Due Process Clause. *Sandin*, 515 U.S. at 483-84. For example, in *Wolff*, the Court found that a Nebraska statutory provision created a liberty interest in an inmate's accumulation of good time credits. 418 U.S. at 557.[14] The Court has also found that a liberty interest in avoiding transfer to particular conditions of confinement may arise from state prison regulations, but only if the transfer "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). Under *Sandin*, a factual comparison must be made between conditions in the general prison population and those in administrative segregation, "examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). There is no single standard for this comparison. Instead, courts examine the "condition or a combination of conditions" in a case by case fashion. *Kennan v. Hall*, 93 F.3d 1083, 1089 (9th Cir. 1996). Specifically, courts consider three factors: (1) whether the challenged sanction "mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody" demonstrating that the prison acted within its discretionary authority; (2) the duration of the sanction; and (3) whether the sanction will affect the length of the prisoner's sentence. *Serrano*, 345 F.3d at 1078.

Once a protected liberty interest has been found, the court need only decide what process is due under the Fourteenth Amendment, which is a question of law, and then decide whether defendants have provided the process due. *Quick v. Jones*, 754 F.2d 1521, 1523 (1984). When an inmate faces disciplinary charges, prison officials must provide the inmate with: (1) a written

---

[14] Notably, *Sandin* did not alter the Supreme Court's ruling in *Wolff*. Therefore, if an inmate challenges a prison's disciplinary action because it results in the forfeiture of his good-time credits, a liberty interest is recognized under both *Wolff* and *Sandin*. This liberty interest triggers the procedural due process guarantees available to inmates under *Wolff*.

statement at least twenty-four hours before the disciplinary hearing that includes the charges and a description of the evidence against the prisoner; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would be unduly harmful to institutional security or correctional goals; (3) legal assistance where the charges are complex or the inmate is illiterate; and (4) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-70.

In addition, the findings of the prison disciplinary board must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .." *Id.* at 455 (citing *U.S. ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)).

As a preliminary matter, the court must determine whether plaintiff has a constitutionally protected liberty interest. The court notes that defendant Schaff found plaintiff guilty of MJ3: battery, and sentenced him to 360 days of disciplinary segregation, 365 days loss of visitation, loss of statutory time referral, and restitution (#32, Ex. G, p. 14). Defendants do not dispute the existence of a protected liberty interest in plaintiff's disciplinary sentence. Accordingly, the court construes defendants' silence as a concession that plaintiff has a constitutionally protected liberty interest entitling him to the procedural protections outlined in *Wolff*. *See* LR 7-2.[15]

---

[15] The court also notes that plaintiff asserts that his disciplinary segregation does not mirror the conditions imposed upon inmates in administrative segregation, general population, or protective custody. *See Sandin*, 515 U.S. at 484; *Serrano*, 345 F.3d at 1078. For example, plaintiff alleges that at HDSP, he was permitted to remain outside of his cell for several hours a day during which time he could shower, play cards, interact with other inmates, purchase canteen products, use the phone for up to thirty minutes, access the main yard and gymnasium, go to the law library, attend meetings and classes, participate in package programs, and receive weekly contact visits from family and friends (#46, p. 8). However, at ESP, plaintiff alleges he is unable to participate in any of these privileges. Plaintiff states that in ESP's disciplinary segregation unit, he is only allowed one ten-minute shower every three days, is shackled anytime he leaves his cell, cannot participate in package programs, is restricted to one fifteen-minute phone call a month, has no interaction with other inmates, has no access to the gymnasium, may not use ink pens, may not receive books from outside vendors, and has very little access to the law library. *Id.* at 9.

*Notice of Charges*

A plaintiff must receive written notice of the charges and a description of the evidence against him at least twenty-four hours prior to the disciplinary hearing. *Wolff*, 418 U.S. at 564. Plaintiff contends he did not receive written notice of the charges until sometime after the disciplinary hearing; and that as a result, plaintiff was forced to defend himself entirely from memory (#46, pp. 4, 46-47). Defendants assert that plaintiff refused to participate in the preliminary hearing where plaintiff would have received a copy of the written notice of charges (#32, p. 6). However, despite plaintiff's refusal to attend, on August 22, 2010, defendant Brown and Officer Portillo slid a copy of the notice of charges under plaintiff's cell door. *Id.*

The record before the court indicates that despite plaintiff's refusal to attend his preliminary hearing, plaintiff received written notice of the charges against him. Both defendant Brown and Officer Portillo stated that they slid a copy of the notice of charges under plaintiff's cell door after plaintiff refused to attend the August 22, 2010, preliminary hearing (#32, Ex. D, ¶¶ 7-11; #32, Ex. E, ¶¶ 5-8). Although plaintiff claims that no one ever slid a copy of the notice of charges under his cell door, "[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Accordingly, the court recommends that defendants' motion for summary judgment (#32) be granted and plaintiff's cross-motion for summary judgment (#46) be denied as to plaintiff's Fourteenth Amendment due process claim that he did not receive written notice of the charges at least twenty-four hours before his disciplinary hearing.

*Plaintiff's Witness—Inmate Crawford*

An inmate facing disciplinary proceedings has the right to call witnesses in his defense so long as permitting him to do so will not be "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. The disciplinary hearing officer does not have to provide inmates "an unfettered right to call witnesses," *Serrano v. S.W. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003), and the hearing officer has the authority to refuse to call a witness whose testimony would be irrelevant, unnecessary, or could "create a risk of reprisal or undermine authority." *Wolff*, 418 U.S. at 566.

The Ninth Circuit has found that "[a] blanket denial of permission for an inmate to have witnesses physically present during disciplinary hearings is impermissible, even where jail authorities provide for interviewing of witnesses outside the disciplinary procedure." *Serrano*, 345 F.3d at 1079 (quoting *Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996)); *see also Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir. 1982) ("A blanket proscription against the calling of certain types of witnesses in all cases involving institutional security is an overreaction which violates minimal due process.") Instead, "the decision to preclude the calling of a witness should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person . . .." *Mitchell*, 75 F.3d at 525.

Plaintiff alleges that defendant Schaff violated his Fourteenth Amendment due process rights by refusing to allow plaintiff to personally question inmate witness Deshawn Crawford at the April 25, 2010, disciplinary hearing (#46, p. 4). Plaintiff contends that defendant Schaff stated he does not believe testimony from inmate witnesses (#22, p. 7). Plaintiff also contends that there is no evidence that allowing Crawford to be present at the hearing would have been "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566-67. Finally, plaintiff contends that

defendant Schaff left the disciplinary hearing to interview inmate Crawford, but when defendant

Schaff returned, he refused to play Crawford's testimony for plaintiff to hear and simply told

plaintiff that Crawford's statements were "no use" (#46, p. 5).

Defendant Schaff asserts that plaintiff has no constitutional right to cross-examine or

confront witnesses at his disciplinary hearing. *See Wolff*, 418 U.S. at 567-68. Defendant Schaff also

argues that both of plaintiff's requested witnesses—inmate Crawford and Officer Portillo—were

permitted to testify at the hearing (#64, p. 5).

The record reflects that defendant Schaff did not permit inmate Crawford to testify at the

hearing. Instead, defendant Schaff interviewed Crawford outside plaintiff's presence (#32, Ex. F, p.

13). While the court recognizes that plaintiff has no constitutional right to cross-examine or confront

adverse witnesses at his disciplinary hearing, this restriction does not extend to plaintiff's own

witnesses. As the Ninth Circuit has stated:

> [D]ue process does not require a jail to allow an inmate to confront and cross-examine witnesses. That assertion is undisputed. It is also irrelevant.
>
> The witnesses at issue in *Baxter*, and in the portion of *Wolff* that *Baxter* analyzed, were prosecution witnesses, and not the inmate's witnesses. An entirely different balancing of concerns applied to confrontation and cross-examination of those witnesses: greater likelihood of hostility and resentment between the accused and the witness, which would erode discipline and threaten corrective aims; lengthening of the proceedings; and a lesser due process interest for the inmate in confronting these witnesses than in calling his own to provide exculpatory evidence. The *Baxter* Court, as well as the *Wolff* Court, determined that on this issue the balance tipped in favor of the prison authorities' concerns for pursuing their safety and correctional goals. Those concerns, and that balance, do not apply to the present case, in which Shabazz sought to call his own witnesses.

*Mitchell*, 75 F.3d at 525-26 (citations omitted). Thus, defendants' assertion that plaintiff has no

constitutional right to personally question his own witness because plaintiff has no constitutional

right to cross-examine or confront witnesses at his disciplinary hearing is unfounded.

That being said, the court does not find that plaintiff had an unequivocal right to personally question inmate Crawford at his disciplinary hearing.  As *Wolff* found, an inmate facing disciplinary proceedings has the right to call witnesses in his defense *only so long as permitting him to do so will not be "unduly hazardous to institutional safety or correctional goals."*  418 U.S. at 566 (emphasis added).  The decision to preclude an inmate from personally questioning an exculpatory inmate witness should be made on a case-by-case basis, looking at "the potential hazards which may flow from the calling of a particular person . . .."  *See Mitchell*, 75 F.3d at 525.  Although the court recognizes that prison officials are not required to state their reasons for refusing to call a witness, the Supreme Court has indicated that such information is "useful" to the court.  *Mitchell*, 75 F.3d at 525 (referring to *Wolff*, 418 U.S. at 566).

Here, it is unclear whether HDSP or defendant Schaff has a blanket de facto policy of prohibiting inmates from calling inmate witnesses to testify in person at their disciplinary hearings. *See Mitchell*, 75 F.3d at 525.  Plaintiff alleges that defendant Schaff refused to permit Crawford from testifying at the hearing and commented that he does not believe testimony from inmate witnesses (#22, p. 7).  The court has listened to the recording from plaintiff's August 25, 2010, disciplinary hearing and has read the accompanying transcript.  The court notes that the transcript has over 148 places in which the transcriber has written the word "indistinct."  The court also notes that the recording is particularly difficult to hear and comprehend during defendant Schaff's discussion of plaintiff's requested witness—inmate Crawford (#32, Ex. F, pp. 13-14).[16]  Thus, it is unclear

---

[16] This portion of the disciplinary hearing transcript reads:

       Mr. Campbell:  (Indistinct.)
       Hearing Officer Schaff:  (Indistinct) refer to the (indistinct).
       Mr. Campbell:  (Indistinct) tell him what I'm telling you when he was the officer that was involved (indistinct).  I can't go, I can't go down there and say (indistinct).
       Hearing Officer Schaff:  (Indistinct.)
       Unidentified man:  (Indistinct), I think, for the – on the due process (indistinct).

whether defendant Schaff told plaintiff that he does not believe or accept testimony from inmate witnesses.

In addition, defendant Schaff did not provide the court with his reasoning for refusing to allow inmate Crawford to testify at plaintiff's disciplinary hearing or for personally interviewing Crawford outside of plaintiff's presence (#64-1, Ex. A; #32, Ex. F).  The court cannot simply presume that defendant Schaff made a personalized determination that allowing Crawford to appear at plaintiff's disciplinary hearing would have been "unduly hazardous to institutional safety or correctional goals."  *Wolff*, 418 U.S. at 566.

Further, there is no indication that defendant Schaff played Crawford's recorded testimony for plaintiff to hear or informed plaintiff what Crawford had said, thereby denying plaintiff the opportunity to meaningfully respond to his witness' testimony.  *See Daigle v. Hall*, 387 F.Supp. 652, 660 (D.Mass. 1975) ("if the testimony against the inmate is not to be presented directly by witnesses, it nevertheless must be revealed to the inmate with sufficient detail to permit the inmate to rebut it intelligently.")[17]  Plaintiff alleges that when defendant Schaff returned from interviewing Crawford, he told plaintiff that Crawford's testimony was of "no use" (#46, p. 5).  However, it is unclear what transpired when defendant Schaff returned from interviewing Crawford, as the recording is garbled.  Crawford's testimony corroborates plaintiff's version of events to a great degree.  Thus, it is not

---

Hearing Officer Schaff:  (Indistinct) Crawford (indistinct).  (Indistinct).
Mr. Campbell:  (Indistinct.)
Hearing Officer Schaff:  Hold on a sec.  (Indistinct) number 1016565 (indistinct).  (Indistinct) 14. (Indistinct) 14.  Pull him back in for a second.
Unidentified woman: Rebecca Campbell.
Hearing Officer Schaff:  (Indistinct.)  I can't bring, I can't bring Crawford here.  I am going to have to (indistinct) recess from here.  I am going to go over and interview Crawford myself, so I'm satisfied.
Mr. Campbell:  Yeah, (indistinct).
Hearing Officer Schaff:  Yeah.  I am going to go and interview Deshawn Crawford back from— number 1016565 and (indistinct) 14.  If you would, please take (indistinct) for copying.  We'll be back here in a few minutes.  (Indistinct.)  You stay here (indistinct).
(#32, Ex. F, pp. 12-14).
[17] Although *Daigle* is not a Ninth Circuit case, the court finds its reasoning to be persuasive.

clear whether defendant Schaff found Crawford's testimony to be of "no use;" and if he did, whether that judgment was based on an individual determination of Crawford's credibility or a blanket refusal to accept Crawford's testimony simply because he is an inmate.

The court finds that genuine issues of material fact exist as to the propriety of defendant Schaff's actions in refusing to permit inmate Crawford to appear in person at plaintiff's disciplinary hearing.  Accordingly, the court recommends that defendants' motion for summary judgment (#32) and plaintiff's cross-motion for summary judgment (#46) be denied as to plaintiff's Fourteenth Amendment due process claim that defendant Schaff refused to let him present an exculpatory inmate witness.

### *Sufficiency of the Evidence*

The findings of the prison disciplinary board must be supported by *some evidence* in the record.  *Hill*, 472 U.S. at 454 (emphasis added).  This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . .."  *Id.* at 455 (citation omitted).

Plaintiff contends that defendant Schaff did not base his guilty finding on the evidence presented at the disciplinary hearing, but instead found plaintiff guilty because his "higher ups" had ordered him to find plaintiff guilty and to give plaintiff the maximum sanctions (#22, p. 7; #46, p. 6). Defendants assert that there is no evidence that defendant Schaff's supervisors ordered him to find plaintiff guilty (#64, p. 4).  Defendants also assert that there is no evidence that defendant Schaff was not an impartial fact-finder or that he found plaintiff guilty based on anything other than the evidence presented at the hearing.  *Id.* at 4-5.

The court finds that plaintiff has failed to set forth any evidence establishing that defendant Schaff was biased or that defendant Schaff relied on his supervisors' improper persuasion in making

his disciplinary decision.  The court has listened to the recording from plaintiff's August 25, 2010, disciplinary hearing and has read the accompanying transcript.  Contrary to plaintiff's assertions, there is nothing in the record to indicate that defendant Schaff told plaintiff that his "higher-ups" had instructed him to find plaintiff guilty and to give plaintiff the maximum penalty (#32, Ex. B, Ex. F). Further, defendant Schaff states, "At no point during the hearing did I express a belief that any superior officer, senior prison official or any other authority figure had 'pre-determined' that inmate Campbell was guilty of the battery with which he was charged" (#64-1, Ex. A, ¶ 8).

Further, the evidence produced at plaintiff's disciplinary hearing was sufficient to find plaintiff guilty of battery.  Defendant Schaff read the notice of charges into the record, heard testimony from Officer Portillo, and interviewed inmate Crawford.  Based on the content of this testimony, there was certainly "some evidence from which the conclusion of the administrative tribunal could be deduced . . .." *Hill*, 472 U.S. at 455 (citation omitted).

Accordingly, the court recommends that defendants' motion for summary judgment (#32) be granted and plaintiff's cross-motion for summary judgment (#46) be denied as to plaintiff's Fourteenth Amendment due process claim that he was denied an impartial hearing officer and that there was insufficient evidence to warrant a guilty finding.

### *Defendants Baca, Neven and Morrow*

The denial of a prison grievance does not in itself rise to the level of a constitutional violation.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("a prisoner has no constitutional right to prison grievances procedures"), *cert. denied* 541 U.S. 1063 (2004)).

Plaintiff alleges that defendants Baca, Neven and Morrow violated his Fourteenth Amendment due process rights by denying grievances related to plaintiff's disciplinary proceedings.

Plaintiff also alleges that these defendants were obligated to reschedule plaintiff for a new disciplinary hearing with an impartial hearing officer (#44, p. 9; #46, p. 7).   Defendants contend that defendants Baca, Neven and Morrow did not violate plaintiff's Fourteenth Amendment due process rights because the denial of prisoner grievances does not state a substantive constitutional claim (#32, p. 7).

Defendants Baca, Neven and Morrow did not personally participate in the alleged due process violations simply by addressing plaintiff's grievances.  A prison officials review and denial of an inmate's grievances, without more, cannot serve as the sole basis for liability under 42 U.S.C. § 1983.  In addition, plaintiff offers no evidence that defendants Baca, Neven and Morrow violated his rights in any way other than responding to grievances.  Although plaintiff alleges that defendants Baca, Neven and Morrow instructed defendant Schaff to find plaintiff guilty of battery (#44, p. 9; #46, p. 7), plaintiff has produced no evidence to this effect and plaintiff's assertions are belied by the record. *See Villiarimo*, 281 F.3d at 1061 ("[u]ncorroborated and self-serving testimony" without more, will not create a genuine issue of material fact precluding summary judgment).

Plaintiff's claims fail as a matter of law.  Accordingly, the court recommends that summary judgment be granted in favor of defendants Baca, Neven and Morrow due to their lack of personal participation in plaintiff's alleged due process violations.

### 2.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1240 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In considering a claim of qualified immunity, the court must determine 'whether the facts that plaintiff

has alleged . . . make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Whether a right is clearly established turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* "[A]ll but the plainly incompetent or those who knowingly violate the law have immunity from suit; officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation." *Id.*

Defendants assert that even if this court concludes that there are genuine issues of material fact as to plaintiff's due process claims, defendant Schaff is nonetheless entitled to qualified immunity because a reasonable correctional officer in the circumstances of plaintiff's disciplinary hearing would have believed that his actions were proper (#50, p. 10; #32, p. 10).

As discussed above, a triable issue of material fact remains as to whether defendant Schaff made an individualized determination that allowing inmate Crawford to appear in person at plaintiff's disciplinary hearing would be "unduly hazardous to institutional safety or correctional goals" or would "create a risk of reprisal or undermine authority." *Wolff*, 418 U.S. at 566. When analyzing a claim of qualified immunity, the court must view the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, when viewing the facts in the light most favorable to plaintiff, defendant Schaff refused to allow plaintiff's witness to testify at the disciplinary hearing without justification. Thus, plaintiff has presented a prima facie due process violation under the facts alleged.

The court also finds that the general law concerning what process is due at a disciplinary hearing was clearly established at the time of the events alleged in plaintiff's complaint. *See Wolff*, 418 U.S. at 566 ("the inmate facing disciplinary proceedings should be allowed to call witnesses . . .

in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."); *Serrano*, 345 F.3d at 1079 (blanket denial of permission for inmates to have witnesses physically present during disciplinary hearings is impermissible, even where prison officials interview witnesses outside the disciplinary procedure); *Mitchell*, 75 F.3d at 525 (decision to preclude calling a witness must be made on a case-by-case analysis of the potential hazards which may result from calling that particular person). Thus, a reasonable correctional officer would be on notice that unjustifiably refusing to permit an inmate's witnesses to be physically present at the disciplinary proceeding, thereby denying the inmate the right to call witnesses on his behalf, would violate the inmate's Fourteenth Amendment right to procedural due process.

Upon resolution of the factual issues, defendant Schaff may be relieved of liability. However, if plaintiff's version of events were to prevail at trial, a jury might decide that defendant Schaff's alleged conduct amounted to a due process violation. Under such circumstances, the alleged actions are not protected by qualified immunity. Accordingly, the court recommends that defendants' motion for summary judgment (#32; #64) be denied as to defendant Schaff's qualified immunity defense.

### III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that the only genuine factual dispute is whether defendant Schaff justifiably refused to permit plaintiff's inmate witness from testifying at the April 25, 2010, disciplinary hearing.

Accordingly, the court recommends that defendants' motion for summary judgment (#32) be **GRANTED in part** and **DENIED in part** and that plaintiff's cross-motion for summary judgment (#46) be **DENIED** in its entirety. The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the

parties may file specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#32) be **GRANTED in part** and **DENIED in part**, as follows:

1.  Defendants' motion for summary judgment (#32) should be **GRANTED** as to plaintiff's Fourteenth Amendment due process claim that he did not receive a written notice of charges at least twenty-four hours before the disciplinary hearing.

2.   Defendants' motion for summary judgment (#32) should be **DENIED** as to plaintiff's Fourteenth Amendment due process claim that defendant Schaff improperly refused to allow plaintiff to call an exculpatory inmate witness at the disciplinary hearing.

3.  Defendants' motion for summary judgment (#32) should be **GRANTED** as to plaintiff's Fourteenth Amendment due process claim that the guilty finding was not based on sufficient evidence.

4.  Defendants' motion for summary judgment (#32) should be **GRANTED** as to plaintiff's Fourteenth Amendment due process claim that defendants Neven, Baca and Morrow improperly denied plaintiff's grievances related to the disciplinary proceedings.

**IT IS ALSO RECOMMENDED** that plaintiff's cross-motion for summary judgment (#46) be **DENIED** in its entirety.


**DATED:  February 4, 2013.**

_____
**UNITED STATES MAGISTRATE JUDGE**